UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MAXIE M. WOODS,

                                Plaintiff,        **No. 1:17-cv-00400(MAT)**
                                                         **DECISION AND ORDER**
          -vs-

NANCY A. BERRYHILL, Acting Commissioner
of Social Security,

                                  Defendant.

---

## I. Introduction

Maxie M. Woods ("Plaintiff"), represented by counsel, brings this action pursuant to Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner"),[1] denying her applications for Supplemental Security Income ("SSI"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## II. Procedural Status

On April 18, 2013, Plaintiff protectively filed an application for SSI, alleging disability beginning January 2, 2013, due to major depressive disorder, bipolar disorder, anxiety disorder, borderline personality disorder, polycystic ovarian cysts, seizures, asthma, and obesity. The claim was denied initially on August 20, 2013. At Plaintiff's request, a hearing was held on

---

[1] Nancy A. Berryhill, is no longer serving as as Acting Commissioner. The Clerk of Court therefore is directed to substitute "The Commissioner of Social Security" for Nancy A. Berryhill as the defendant in this action. *See* 20 C.F.R. § 422.210(d).

June 1, 2015, before Administrative Law Judge Stephen Cordovani ("the ALJ") in Buffalo, New York. Plaintiff appeared with her attorney and testified, as did impartial vocational expert David A. Festa ("the VE"). After the hearing, the ALJ held the record open for submission of additional evidence, which was received and entered into the record as Exhibits 37F-42F.

On October 13, 2015, the ALJ issued an unfavorable decision. Applying the five-step sequential evaluation, 20 C.F.R. 416.920, the ALJ found, at step one, that Plaintiff had not engaged in substantial gainful activity ("SGA") since the application date.[2] At step two, the ALJ determined that Plaintiff has the "severe" impairments of major depressive disorder, bipolar disorder, anxiety disorder, borderline personality disorder, polycystic ovarian cysts, seizure disorder, and the combination of asthma and obesity. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. The ALJ particularly considered Listings 3.03 (Asthma), 11.02 (Epilepsy - Convulsive Epilepsy), 11.03 (Epilepsy - Nonconvulsive Epilepsy), 12.04 (Affective Disorders), 12.06 (Anxiety-Related Disorders), and 12.08 (Personality Disorders). Prior to proceeding to step four,

---

[2] Plaintiff testified that she worked part time for about three weeks as a customer service job from December 2013 to January 2014, which involved calling people as part of a survey. She attested that this job ended when she started college. While there are 2014 earnings shown on the earnings record after the onset date, the ALJ found that they fell "well below" the amount required for SGA. T.20.

-2-

the ALJ assessed Plaintiff as having the residual functional capacity ("RFC") for a limited range of unskilled, light work. At step four, the ALJ determined that Plaintiff had no past relevant work. At step five, the ALJ relied on the VE's testimony to conclude that a person of Plaintiff's age (18 years-old), education (high school equivalency degree), and RFC could perform the requirements of the following representative jobs that exist in significant numbers in the national economy: racker (Dictionary of Occupational Titles ("DOT") code 524.687-018), cleaner/housekeeper (DOT code 323.687-014), and office helper (DOT code 239.567-010). Accordingly, the ALJ entered a finding of not disabled.

Plaintiff's request for review by the Appeals Council was denied, making the ALJ's decision the final decision of the Commissioner. Plaintiff then timely commenced this action.

The parties have cross-moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Neither party has filed a reply brief. The Court adopts and incorporates by reference herein the undisputed factual recitations contained in the parties' memoranda of law and will discuss the record evidence as necessary to the resolution of the parties' motions.

For the reasons discussed below, the Commissioner's decision is affirmed.

**III. Scope of Review**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g) (stating the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shaw v. Chater,* 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. *Tejada v. Apfel,* 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart,* 336 F.3d 172, 179 (2d Cir. 2003) (citation omitted).

**IV. Discussion**

    **A. Plaintiff's First Argument: The ALJ Erred in Weighing Treatment Providers' Reports and Opinions**

        **1. Dr. Bellamkonda S.V. Raghu**

Plaintiff argues that the ALJ erred by assigning non-controlling weight to a treatment note dated September 25, 2013, by Dr. Raghu at BryLin Behavioral Health Center, where Plaintiff sought follow-up treatment after an in-patient

psychiatric stay. T.350-52.[3] The Commissioner argues that the ALJ correctly weighed Dr. Raghu's report and found that it was non-probative of Plaintiff's functional limitations.

When Plaintiff presented to Dr. Raghu for an "Initial Psychiatric Evaluation," the doctor described her as having a disheveled appearance, a disinterested mood with psychomotor retardation, and slow and inaudible speech. T.350-51. Dr. Raghu noted Plaintiff was positive for depression and anxiety and also checked boxes indicating the following symptoms were present: poor concentration, poor insight, poor judgment, poor appetite, and poor sleep. T.351. However, Plaintiff had no cognitive deficits and displayed no bipolar or psychotic symptoms; her perceptions were normal; she was not delusional; and she denied suicidal ideation or thoughts of harming others. Dr. Raghu assessed a Global Assessment of Function ("GAF") score of 35.[4] Dr. Raghu provided a diagnosis of major depressive disorder and noted a history of borderline personality disorder traits. T.350, 352.

The ALJ assigned "[l]ittle weight" to this GAF assessment because it was "inconsistent with the claimant's own statement in this report that she was doing okay and feeling a little bit

---

[3] Citations to "T." refer to pages in the certified administrative transcript.

[4] The GAF is a rating of overall psychological functioning on a scale of 0 to 100. A rating of 31-40 means some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. See Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., text revision, 2000) ("DSM-TR-IV").

-5-

depressed." T.33. The regulations applicable to weighing medical opinions state that consistency between the opinion and the record is an important factor in determining the weight to be assigned to such opinions. *See* 20 C.F.R. 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). The ALJ did not mischaracterize the record and properly considered the inconsistency between Plaintiff's own statements to Dr. Raghu, which indicated no acute psychiatric symptoms or complaints, and the GAF score assigned by Dr. Raghu.

The ALJ also gave Dr. Raghu's check-box ratings "little weight because there [was] no rationale for such ratings/conclusions" or "objective evidence" cited, and therefore it had "little probative value[.]" (T.33). Again, the ALJ considered a proper regulatory factor, namely, the quantity and quality of evidentiary support for the provider's opinion. See 20 C.F.R. 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion.").

### 2. Therapists James Lusk and Michael Cammarata

Plaintiff argues that the ALJ erred by assigning "little weight" to the mental RFC questionnaires completed by therapist James Rusk, T.546-50, and therapist Michael Cammarata, T.643-47,

"without explanation as to how their opinions factored into the [RFC]." Plaintiff's Memorandum of Law ("Pl.'s Mem.") at 25-26.

The ALJ stated that since neither Rusk nor Cammarata were treating physicians, he was considering their opinions under Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939 (S.S.A. Aug. 9, 2006). (T.36). As the ALJ noted, SSR 06-03p provides that information from "other sources," such as therapists and social workers, cannot establish the existence of a medically determinable impairment. SSR 06-03p, 2006 WL 2329939, at *2. However, evidence from such other sources may be used to demonstrate the severity of a claimant's impairment and how it affects his or her ability to work. 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1). Although opinions from "other sources" are not entitled to the presumption of deference applicable to opinions from treating, "acceptable medical sources," they must be considered because the adjudicator is required to evaluate all evidence that comes before it. The factors required for analysis of a treating physician's opinion can also be applied to opinion evidence from other sources. SSR 06-03p, 2006 WL 2329939, at *4. These factors include how long the source has known and how frequently the source has seen the individual; how consistent the opinion is with other evidence; whether the source has a specialty or area of expertise related to the individual's impairment(s); and any other factors that tend to support or refute the opinion. *Id.* at *4-*5.

Here, the ALJ determined that "[o]nly partial weight" should be given to Rusk's and Cammarata's opinions because they were "not from an acceptable source" and were "somewhat vague, as the questionnaires fail to adequately define what 'less than satisfactory' represents in vocational terms." (Id.). The ALJ is correct. One of the ratings on the form is "[s]eriously limited, but not precluded." (T.548). The form defines this redundantly as meaning that the patient's "ability to function in this area is seriously limited and less than satisfactory, but not precluded[,]" (id.), or "a substantial loss of ability to perform the work-related activity." (Id.). Under SSR 06-03p, "the degree to which the source presents relevant evidence to support an opinion" and "how well the source explains the opinion" are appropriate factors to consider when weighing an opinion from an "other source" such as Rusk. *See* SSR 06-03p, 2006 WL 2329939, at *4.

The ALJ also found that the therapists' opinions that Plaintiff "would miss four days of work per month are clearly not supported by these reports." T.36. As the ALJ noted, neither Rusk nor Cammarata provided any explanation as to why they believed Plaintiff would have that level of absenteeism. When weighing the therapists' opinions, the ALJ was entitled to consider "the degree to which the source present[ed] relevant evidence to support an opinion" and "how well the source explain[ed] the opinion," SSR 06-03p, 2006 WL 2329939, at *4.

Finally, the ALJ found, "the functions that claimant is described as being able to perform satisfactorily or very good or without limitation, are largely not inconsistent with" his RFC formulation. T.36. This is an accurate characterization of the record. For instance, Rusk found that Plaintiff had "[u]nlimited or [v]ery [g]ood" ability to "[r]emember work-like procedures," "[u]nderstand and remember very short and simple instructions," "[c]arry out very short and simple instructions," and "[b]e aware of normal hazards and take appropriate precautions." T.548. In addition, Rusk opined that Plaintiff had "[l]imited but satisfactory" ability to "[m]aintain attention for two hour segment," "[s]ustain an ordinary routine without special supervision," "[m]ake simple work-related decisions," "[p]erform at a consistent pace without an unreasonable number and length of rest periods," "[a]sk simple questions or request assistance;" and "[r]espond appropriately to changes in a routine work setting." T.548. As the ALJ found, these ratings are not inconsistent with his RFC limiting Plaintiff to, *e.g.*, working in a low stress work environment in a job that requires her to understand, remember and carry out simple instructions and tasks; does not have any supervisory duties or strict production quotas; does not require independent decision-making; has only minimal changes in work routine and processes; and requires only occasional interaction with co-workers and the general public. T.24. Therefore, contrary to Plaintiff's argument, the ALJ explained how he considered these

two assessments within the parameters of the regulations and SSR 06-03p and incorporated the therapists' opinions on her functional limitations into his RFC formulation.

**B.    Plaintiff's Second Argument: The ALJ Erred in Assessing Plaintiff's Credibility**

Plaintiff argues the ALJ inappropriately relied on some of her activities to discredit her subjective complaints. *See* Pl.'s Mem. at 28-29. The Commissioner responds that the ALJ considered the proper regulatory factors, and that his credibility assessment is supported by substantial evidence.

The Commissioner's regulations set forth a two-step process for evaluating symptoms such as pain, fatigue, weakness, depression, and nervousness. *See* 20 C.F.R. § 416.929(c). First, the ALJ must determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms; if so, the ALJ must then evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which they limit the claimant's capacity for work. 20 C.F.R. § 416.929(c)(1). Although an ALJ is required to consider a claimant's reports about her symptoms and limitations, *see* 20 C.F.R. §§ 404.1529(a), 416.929(a), an ALJ is "not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record[.]" *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). "If

the [Commissioner's] findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints." *Aponte v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (internal citations omitted)

Here, the ALJ "note[d] that the record contains several inconsistencies which adversely affects the credibility of some of the allegations" by Plaintiff concerning her impairments. For example, the ALJ found that contrary to her assertion that she is "unable to work at all because of her impairments," she nevertheless was able to work part time from December 2014, to January 2015, doing telephone survey work, and "only left this job because she was starting college, not because she could not do the job." T.37. The ALJ also noted that Plaintiff took out student loans to attend college, "where she enrolled full time with an additional extracurricular activity involving concert band[,]" and "lived on campus with a roommate." *Id.* The ALJ concluded that "[s]uch efforts are clearly inconsistent with the degree of severity" Plaintiff assigned to her subjective complaints. *Id.*

Under the regulations, the ALJ was permitted to consider Plaintiff's daily activities when determining the credibility of her subjective complaints. *See* 20 C.F.R. § 416.929(c)(3)(i) ("Factors relevant to your symptoms, such as pain, which we will consider include . . . (i) Your daily activities. . . ."); *see also* SSR 96-7p, 1996 WL 374186, at *5 (S.S.A. July 2, 1996) ("Assessment

-11-

of the credibility of an individual's statements about pain or other symptoms and about the effect the symptoms have on his or her ability to function must be based on a consideration of all of the evidence in the case record. This includes . . . the individual's . . . prior work record and efforts to work, daily activities. . . .").[5] Thus, the ALJ was well within his discretion in considering Plaintiff's part-time work and efforts to attend college as being indicative of a greater ability to function. It is true, as Plaintiff points out, that she ultimately withdrew from classes and took a medical leave. Nevertheless, the ALJ was permitted to, and properly did consider, the fact that Plaintiff was able to work a part-time job that she did not leave due to any problems caused by her impairments, but rather because she wanted to pursue her education.

The ALJ also noted that Plaintiff apparently failed to continue neurological care for her seizures, and he cited to a treatment note dated October 31, 2013, that she stopped seeing her neurologist because she did not like him. T.20 (citing T.490). The ALJ opined that this was "not consistent with severe neurologic difficulties." T.20. The ALJ certainly was permitted to consider Plaintiff's treatment history for her seizures, including her non-compliance with treatment recommendations. *See* 20 C.F.R.

---

[5]

The Court notes that SSR 96-7p was superceded by SSR 16-3p, which became effective on March 28, 2016. SSR 96-7p, however, remains the relevant guidance for the purposes of Plaintiff's claim, which was filed on April 13, 2013.

§ 416.929(c)(3)(v) (ALJ may consider "[t]reatment, other than medication, [the claimant] receive[s] or have received for relief of [her] pain or other symptoms"); *see also* SSR 96-7p, 1996 WL 374186, at *4. It is true that "the [ALJ] must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7p, 1996 WL 374186, at *7. However, the record indicates that when Plaintiff told her physician, Dr. Jamela Khan, that she had stopped seeing her neurologist, it was because she "did not like him." T.490. Notably, at that appointment, Plaintiff did not report any symptoms or anxiety, depression, or mood changes to Dr. Khan. *Id.* Thus, there is no indication that Plaintiff's mental impairments were the cause of her discontinuing treatment with the neurologist.

Plaintiff further contends that the ALJ erred in stating that her "credibility is significantly diminished by statements about the severity of her condition which are not substantiated by the medical evidence" such as her shortness of breath, tremors, and problems with lifting. Plaintiff suggests that because she "is suffering with mental illness that certainly interferes with decision making, behavior, and causes emotional lability[,]" Pl.'s Mem. at 30 (citation to record omitted), it was improper for the

ALJ to hold these inconsistencies against her. As an initial matter, this conclusion appears to be Plaintiff's attorney's lay opinion. Moreover, the crux of a credibility assessment is weighing a claimant's subjective complaints against the record as a whole, including the objective evidence. *See* 20 C.F.R. § 416.929(a) ("In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.").

Ultimately, "[i]t is the function of the [Commissioner], not [the reviewing court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.,* 705 F.2d 638, 642 (2d Cir. 1983) (citations omitted). Where, as here, there is substantial evidence to support the ALJ's determination, "'it would be improper for a reviewing court to parse the cold record for a different result.'" *Pascariello v. Heckler,* 621 F. Supp. 1032, 1036 (S.D.N.Y. 1985) (quoting *Deyo v. Weinberger,* 406 F. Supp. 968, 974 (S.D.N.Y. 1975)).

The Court finds that the ALJ did not misapply the proper regulatory factors or misstate the record. Furthermore, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[,]" *Richardson v. Perales,* 402 U.S. 389, 401 (1971), supports the ALJ's decision that Plaintiff's testimony, "taken as a whole, did not preclude the possibility that she could

perform gainful activity," *Rivera v. Harris*, 623 F.2d 212, 216 (2d Cir. 1980), at the unskilled, light exertional level.

**V. Conclusion**

For the foregoing reasons, the Court finds that the Commissioner's decision was not legally erroneous and is supported by substantial evidence. It therefore is affirmed. Accordingly, Defendant's motion for judgment on the pleadings is granted, and Plaintiff's motion for judgment on the pleadings is denied. The Clerk of Court is directed to close this case.

ALL OF ABOVE IS SO ORDERED.

S/Michael A. Telesca

HON. MICHAEL A. TELESCA
United States District Judge

Dated: September 13, 2018
Rochester, New York.